CIRCUIT COURT FOR MULTNOMAH COUNTY, JUNE TERM, 1871.

## W. W. CHAPMAN *v.* JAMES H. WILBUR.

TRUSTEE.—Where one in possession, without title, conveyed two adjacent blocks of land in trust, "for the purpose of erecting an academy *thereon* and *therewith,*" with covenants for further assurance, and having afterwards acquired the legal title, executed a deed purporting to be confirmatory of the former deed, and purporting to recite its substance, but which describes the former deed as a deed conveying the "land for the purpose of establishing *thereon* a seminary of learning *to be divided into a male and female academy;*" and which in terms grants the land in trust, "for the uses and purposes aforesaid." *Held,* that the change in language does not denote an agreement on the part of the *cestuis que trust* to change the nature of the trust.

VOLUNTARY CONVEYANCE.—The execution of an assignment by the trustee (he being the grantee) which was written on the back of the confirmatory deed, was held not to be conclusive proof that the trustee knew the contents of the confirmatory deed.

RATIFICATION.—Upon proof that the trustee had no knowledge of a discrepancy between the terms of the original deed and those of the confirmatory deed, and that the latter was in the custody of another, and was never in the custody of the trustee, except for the purpose of signing the release written thereon. *Held,* that such signing was not a ratification of, or consent to, a change in the character of the trust.

CONSTRUCTION.—In construing contracts, meaning must be given to each of the terms employed if possible.

THIS is a suit to recover a parcel of land, formerly conveyed by the plaintiff, in trust, on the ground of forfeiture by misappropriation.

*J. H. Reed* and *W. W. Chapman,* for plaintiff.

*A. C. Gibbs* and *Caples & Moreland,* for defendant.

UPTON, J. This case was referred, and the referree heard the cause and reported a decree in favor of the plaintiff; it is now submitted on the defendant's motion to set aside the report, and on the plaintiff's motion for confirmation.

The following are the material facts: On the 7th day of September, 1850, that is, twenty days before the passage of the donation act, Stephen Coffin, D. H. Lownsdale and W. W. Chapman, being in possession, conveyed two adjacent

blocks of land, known as blocks 205 and 224 in the city of Portland, to "James H. Wilbur, trustee, for the use and benefit of the Methodist Episcopal Church of Oregon" * * * "for the purpose of erecting an academy *thereon and there- with,*" * * * "to be by him conveyed to such person as shall be appointed to receive and hold the title for the use and benefit of the Methodist Episcopal Church of Oregon." This deed contained the following: "And we further cove- nant that if we shall obtain title to said property from the United States, we will convey the same as aforesaid by deed of general warranty. We further covenant to warrant and defend the said property against the claims of all persons claiming by, through or under" us.

Soon after receiving the deed, Wilbur went into posses- sion of the premises, and in concert with the said church erected a building on block 205, and instituted an academy upon it. The plaintiff, about the first day of September, 1853, obtained the legal title to the premises from the United States, and on the tenth day of that month he and his wife executed a deed of the premises to "James H. Wilbur, trustee of the *Oregon Annual Conference* of the Methodist Episcopal Church in Oregon." This deed pro- fesses to recite the purport of the former deed and to be confirmatory of it, but departs from its tenor in several particulars.

It states the date of that deed as of the "twenty-fifth of June, 1851," and refers to the grantors as having then "by deed of quitclaim conveyed to the said James H. Wilbur, trustee as aforesaid, the property hereinafter described, for the purpose of establishing *thereon* a seminary of learning, *to be divided into a male and female academy.*"

It is not shown to whom this latter deed was delivered, nor with whom it was left at that time, but it was afterwards found in the hands of some one of the several persons inter- ested in maintaining and conducting the academy.

In 1853 a corporation was formed by act of the territorial legislature, called "the board of trustees of the Portland Academy and Female Seminary." This corporation was organized, and its trustees held its first meeting on the 4th

of March, 1854. It is admitted that this corporation is the agent or person duly appointed "to receive and hold the title for the use and benefit of the Methodist Episcopal Church of Oregon," and to manage the affairs of the academy.

Up to about 1853, Mr. Wilbur had continued to act as such agent and trustee, and in the construction of the academy, which was completed in 1851, he had advanced of his own funds over $5,000. Afterwards the defendant, Wilbur, assigned or transferred the two blocks to the said Board of Trustees of the Portland Academy and Female Seminary, and that Board, having audited the accounts of the defendant, and found a large amount due him on account of advances made by him in constructing the academy building, bargained with him to take block 224 in satisfaction of that claim, and the Board executed a conveyance to him of that block on the 9th of June, 1860; since which time the defendant has held block 224, claiming it to his sole use.

The plaintiff claims that these acts have worked a forfeiture, and that block 224 should revert to the plaintiff. It is claimed that Wilbur, while trustee, accepted the confirmatory deed as a fulfillment of the covenants of the original deed of September 7th, 1850, and that thereupon the rights acquired by means of the first deed merged in the legal title, and the first deed was no longer of any force.

To sustain this position the plaintiff produced, among other proofs, the following endorsement, written on the confirmatory deed:

'  "I hereby relinquish, convey and give up all my right, title and interest to block No. 205, described in this deed, to the Trustees of the Portland Academy and Female Seminary.                           J. H. WILBUR.

"Dated PORTLAND, Aug. 15, 1855."

The evidence shows that the deed had not previously been delivered to Wilbur; but at the time of that endorsement it was produced by some person interested in the affairs of the Academy, at whose request Wilbur made the assignment above set forth; that Wilbur did not then read it or know its contents; and he testifies that he never knew

its contents, or that there was any discrepancy or difference between its terms and those of the deed of Sept. 7th, 1850, until the year 1869. And that he had not had charge of the affairs of the Academy since 1853.

Aside from what appears on the face of the deed and the indorsement, and the fact that about 1855, it was in the hands of some one of the persons having the management of the academy, the court is left to conjecture in regard to its delivery. Several circumstances, and chiefly the error in reciting the date of the original deed, indicate that the original deed was not present when the confirmatory deed was drafted. And there is no doubt the misdescription of the date resulted from mistake. I think it more reasonable, since one of these discrepancies or departures from the letter of the original deed is positively shown to be the result of inadvertency or mistake, to conclude that the other departures from these terms resulted from the same cause, than to hold, without other proof, that the parties mutually agreed to change the character of the trust.

It is claimed that the principal object in changing the terms employed to express the trust, was to provide for maintaining an academy for males on one of the blocks, and an academy for females on the other. The evidence relied upon to support this conclusion, is the language of the second deed above quoted, and the name given to the corporation created by the legislature. The act speaks of the Portland "academy and female seminary;" but the second deed speaks of a "seminary of learning, to be divided into a male and female academy." I can not say that either of these expressions decidedly indicate whether males and females were to be taught in one building or in two; or if in two, whether both buildings were to be erected on one block. The dissimilarity of these names indicates the reverse of a matured plan to change the character and plan of the institution, or the nature of the trust. If a change in the nature of the trust had been decided upon, it is hardly probable that the parties would have left the fact to be inferred from ambiguous expressions contained only in the recitals of the deed; to say nothing as to whether the

trustees had power to make such change, and thus bind the *cestuis que trust*. The discrepancy between the names employed in the act of the legislature, and those in the second deed, as well as the general tenor of the second deed, when compared with the first, indicates inattention to the particulars of the trust, rather than a mature plan of changing its nature.

This conclusion is strengthened by the circumstances that the *cestui que trust* was not consulted, that the prior and subsequent action of the grantees proceeded upon the theory of building but a single academy or seminary, and that, of the many persons now resident here, who then took an active interest in the institution, no one has been produced who recollects hearing of the proposition, or knows any facts tending to show that such a change was contemplated.

When we examine the two deeds for the purpose of determining whether the covenants of the former have been abandoned or merged in the latter, we find that the second deed, which purports to recite the purposes of the first, makes the grant "to the said Rev. James H. Wilbur in trust" * * * "for the uses and purposes *aforesaid*." The phrase, uses and purposes, may as well be referred to the uses and purposes actually expressed in the first deed, as to those erroneously quoted in the second, since the reference makes it necessary to read both deeds together. I cannot think it a reasonable deduction from the deeds, that the parties intended to make the change.

It is not necessary to determine the question whether Mr. Wilbur or the subsequent agents or trustees had the power to make such change without the consent of *cestui que trust*, because the weight of evidence is that they never contemplated the change.

It follows that the covenants expressed in the original deeds are still in force; and that the right of the trustees to sell one of the blocks in order to raise funds with which to erect an academy building depends on the construction of that instrument.

If it was the intention of the parties that a portion of the land should be sold to raise money wherewith to build, it is

not a material question in this case whether the block was sold before the building was erected, or sold in satisfaction of money actually advanced for that purpose in good faith before the sale.

A lengthy investigation was had, with the intent to show that the money had not been advanced in good faith as alleged. But the attempt was not successful. It is shown that the account was audited by the board of trustees, who were appointed in pursuance of law, and whose business it was to pass upon it. This board deemed the account correct, and deemed it for the interest of the institution that the block should be sold to satisfy the demand. The only debatable question presented is whether it was the intention of the parties, as expressed in the conveyance of the land to the trustee, that a part of the land might be sold. The plaintiff is estopped by his covenants and can not object to any use of the land that is in accordance with the terms of the grant.

It is a rule in construing contracts, that meaning must be given to each of the terms employed if possible.

When the parties expressed the purpose of erecting an academy thereon and therewith, they intended something by the words employed; and unless there is some sufficient reason to be found, a court has no more right to reject the word "therewith" as meaningless, than to reject the word "thereon."

It is said the building cannot be erected thereon, that is, on the whole, after one half is sold. Literally, the position is correct, and it is equally true that if none of it is sold a building cannot be erected therewith. Shall the whole contract be rejected because it is impossible to comply with a perfectly literal construction; in other words, because it is impossible at the same time to erect a building on the whole of it, and with the whole of it?

I can see no reason for rejecting the word "therewith," and the only reasonable construction of the language used indicates that a portion of the land would be made use of to procure means with which to erect a building on the residue. This was giving to the trustee no broader dis-

cretion in this respect than was given him in other particulars; as for instance, in regard to the kind and size of the building, the time when it should be commenced and completed, and the part of the premises on which it should be situated.

The report of the referee is set aside, and the decree should be for the defendant.